# United States Court of Appeals

## For the First Circuit

No. 04-2656

AVX CORPORATION and AVX LIMITED,

Plaintiffs, Appellants,

v.

CABOT CORPORATION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Boudin, Chief Judge,

Selya, Circuit Judge,

and Siler,[*] Senior Circuit Judge.

Evan Slavitt with whom Bodoff & Slavitt LLP was on brief for appellants.
Robert S. Frank, Jr. with whom Brian A. Davis, Terrence M. Schwab and Choate, Hall & Stewart LLP were on brief for appellee.

September 13, 2005

---

[*]Of the Sixth Circuit, sitting by designation.

**BOUDIN**, **Chief Judge**.  This appeal, raising an interesting res judicata issue, grows out of two law suits between essentially the same parties: AVX Corporation and AVX Limited (collectively, "AVX"), and Cabot Corporation ("Cabot").[1]  AVX makes electronic components and other products in which the metallic element tantalum is sometimes employed.  Cabot purchases tantalum, converts it into powder or wire, and sells these products to manufacturers such as AVX.

Because the present case was resolved on a motion to dismiss, we accept as true the allegations in AVX's complaint.  Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).  In early 2000, AVX and Cabot, who had done business for some time, signed a letter of intent to enter into a two-year tantalum purchase agreement.  Later in the year, as the market for tantalum tightened, the parties signed a final five-year agreement (effective January 1, 2001) with quantity and price terms less favorable to AVX than those contemplated by the letter of intent.

In July 2002, AVX Corporation sued Cabot and a Cabot affiliate in the federal district court in Massachusetts, charging them with unlawful price discrimination under the Robinson-Patman Price Discrimination Act, 15 U.S.C. § 13 (2000), and asserting claims under Massachusetts law; one aim of the suit was to

---

[1]Cabot affiliate Cabot Performance Materials, Inc. was also a defendant in the first law suit, but not in the second.

invalidate the five-year agreement and to have the 2000 letter of intent treated as a binding contract. Although the complaint asserted diversity jurisdiction, AVX Corporation and Cabot Corporation are both Delaware corporations, precluding diversity. Nevertheless, the Robinson-Patman count is within the district court's original jurisdiction, 28 U.S.C. § 1337 (2000), and the state claims were potentially within the court's pendent jurisdiction, id. § 1367.

On February 5, 2003, the court held a hearing on a motion by Cabot to dismiss the action, during which the district judge agreed with Cabot that the Robinson-Patman claim (and one of the six state counts) had to be dismissed for failure to state a claim. Specifically, the court found that the complaint's allegations did not include all necessary elements of a Robinson-Patman claim, although it said that AVX could try to repair the pleading deficiency. The court also found that AVX Limited was a necessary party and instructed AVX that it must amend the complaint to include AVX Limited if it wished to move forward, giving AVX thirty days to file any desired amendment.

Within thirty days AVX filed an amended complaint, joining AVX Limited as a plaintiff and setting forth its state law claims but no federal counts. Cabot responded by moving to dismiss for lack of federal subject-matter jurisdiction, and shortly thereafter Cabot filed a declaratory judgment action against AVX in

Massachusetts Superior Court seeking to have the state court declare the five-year agreement valid. Then, before the district court took any further action, AVX and Cabot filed a joint stipulation of dismissal under Fed. R. Civ. P. 41(a)(1)(ii) dismissing "this action . . . without prejudice . . . ."

Back in state court, AVX subsequently asserted, as counterclaims, the state law claims asserted in its original federal court complaint. After a nine-month delay, AVX then sought to add to its counterclaims an additional count alleging violations of the Sherman and Clayton Acts, 15 U.S.C. §§ 1, 14, as well as state antitrust laws. This claim asserted that Cabot used its monopoly power over certain tantalum products to force AVX to purchase other tantalum products that it did not need--in antitrust parlance, a classic tying violation. Once again, AVX targeted the five-year purchase agreement signed in late 2000.

After the Superior Court denied the motion to amend--federal courts have exclusive jurisdiction over federal antitrust claims, 15 U.S.C. §§ 4, 15; see Gen. Inv. Co. v. Lake Shore & Mich. S. Ry. Co., 260 U.S. 261, 286-87 (1922)--AVX filed the present law suit against Cabot in federal district court, presenting the same Sherman and Clayton Act claim it had asserted in its proposed state-court amended counterclaim. The case was transferred to the same district judge who had presided over AVX's original 2002

-4-

action. In due course, the district court dismissed the new complaint on res judicata grounds.

The district court found that the case met the three-part test for federal claim preclusion set forth in In Re Iannochino, 242 F.3d 36, 43 (1st Cir. 2001): it said that the original Rule 12(b)(6) dismissal of the Robinson-Patman claim was a final judgment on the merits; that the new Sherman and Clayton Act claim was sufficiently related to the Robinson-Patman claim to invoke res judicata; and that the parties to the two federal actions were the same. AVX now appeals to contest this ruling. Our review is de novo. Porn v. Nat'l Grange Mut. Ins. Co., 93 F.3d 31, 33 (1st Cir. 1996).

The rules for res judicata, where a federal court is considering the effect of its own prior disposition of a federal claim on a newly brought federal claim, are a matter of federal law. Apparel Art Int'l, Inc. v. Amertex Enters. Ltd., 48 F.3d 576, 582 (1st Cir. 1995). The rules have developed through judicial decision, drawing on common law res judicata doctrine as it has developed over time. This case does not involve collateral estoppel (or issue preclusion) but rather the branch of res judicata known as merger and bar (or claim preclusion).

Traditional merger and bar doctrine prevents a party from asserting a claim previously decided on the merits by a final judgment in another case between the same parties (or their

-5-

privies): the re-asserted claim is deemed "merged" into the prior judgment if the plaintiff had won or "barred" by it if the plaintiff had lost. See Restatement (Second) of Judgments § 18 & cmt. a (1982) (merger); id. § 19 (bar). Ordinarily, a dismissal for failure to state a claim is treated as a dismissal on the merits, and there is abundant case law to this effect. E.g., United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 241 (1st Cir.), cert. denied, 125 S. Ct. 59 (2004); Acevedo-Villalobos v. Hernandez, 22 F.3d 384, 388-89 (1st Cir.), cert. denied, 513 U.S. 1015 (1994).

In the common-law vocabulary, a price discrimination claim under the Robinson-Patman Act would not be the same claim as monopolization or tying claims under the Sherman and Clayton Acts, because the Robinson-Patman claim has quite different elements that must be proved to make out the claim. So one might expect that claim preclusion would not operate in the present case. However, as a result of case law development, identity of claims in the common-law sense is no longer a precondition to federal claim preclusion. In most situations involving federal claims, it is now enough to trigger claim preclusion that the plaintiff's second claim grows out of the same transaction or set of related transactions as the previously decided claim. Aunyx Corp. v. Canon U.S.A., Inc., 978 F.2d 3, 6-7 (1st Cir. 1992), cert. denied, 507 U.S. 973 (1993); Kale v. Combined Ins. Co. of Am., 924 F.2d 1161,

1166 (1st Cir.), cert. denied, 502 U.S. 816 (1991). The implicit rationale is that for the sake of efficiency, all such claims should be brought together, if this is possible. In short, the res judicata doctrine functions not only in its traditional role of preventing repeat claims, but has become a compulsory joinder requirement for closely related claims. Compare Fed. R. Civ. P. 13(a).

In this case, there is a substantial argument that the Sherman and Clayton Act claim grows out of the same transaction or set of transactions as the Robinson-Patman claim; the district court so found, although AVX contests the ruling, and both complaints focus on the same contract. We bypass the "same transaction" issue because we conclude that the district court's February 5, 2003, dismissal of the Robinson-Patman count was not a "final judgment" and that the entire action was ultimately disposed of by stipulation "without prejudice."

The first requirement for claim preclusion--the rules may be somewhat different for issue preclusion, see Restatement (Second) of Judgments § 13 & cmt. g--is that there be a final judgment in the prior case. Id. §§ 13, 18-19. In this instance, the district judge in the original federal action announced from the bench his decision to dismiss the Robinson-Patman count (and one state count); but a number of state claims were left pending, quite apart from the leave given to amend the Robinson-Patman claim

-7-

within thirty days. At no point did the court enter a final judgment as to all of the claims, Fed. R. Civ. P. 58, or a partial final judgment as to the Robinson-Patman claim, Fed. R. Civ. P. 54(b).

The order from the bench patently did not constitute a final judgment for purposes of the statutes and rules governing the timing of appeals from final judgments. Ordinarily, a judgment is not final unless it disposes of all claims against all parties, although it is possible to have a partial final judgment as to some claims or some parties under Fed. R. Civ. P. 54(b). In a few instances, the statutes or doctrine also permit interlocutory appeals (e.g., preliminary injunctions and certified controlling questions of law, 28 U.S.C. § 1292), but no such exception is applicable here.

In each of the cases cited by the district court and by Cabot for the proposition that Rule 12(b)(6) dismissals have claim-preclusive effect, the dismissal disposed of an entire complaint, not just some subset of the plaintiff's claims. See Karvelas, 360 F.3d at 223, 241; Acevedo-Villalobos, 22 F.3d at 386; Isaac v. Schwartz, 706 F.2d 15, 16-17 (1st Cir. 1983) (decided under Massachusetts law); Andrews-Clarke v. Lucent Techs., Inc., 157 F. Supp. 2d 93, 97 (D. Mass. 2001); Connaughton v. New England Tel. & Tel., No. 87-2369-MA, 1988 WL 34321, at *1 (D. Mass. Mar.

18, 1988).[2] As such, the dismissal in fact "end[ed] the litigation on the merits and le[ft] nothing for the court to do but execute the judgment," Acevedo-Villalobos, 22 F.3d at 388 (quoting Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 373-74 (1981)), and thus is properly considered a "final judgment" for federal claim preclusion purposes.

A final judgment embodying the dismissal would eventually have been entered if the state claims had been later resolved by the court. Instead, before any further action by the court, AVX and Cabot jointly dismissed the entire action without prejudice. Even without the parties' use of the phrase, the entire action was automatically dismissed without prejudice by virtue of Rule 41's terms because the parties did not specify a dismissal with prejudice. See Fed. R. Civ. P. 41(a)(1).

Thus, if the conventional finality tests for appealability purposes are applied to determine the finality of a judgment for claim preclusion purposes, there was never a final judgment on the Robinson-Patman claim. There was only the announcement of a dismissal, which would have matured into a final judgment if the court had ever resolved the remaining claims.

---

[2]The Rule 12(b)(6) dismissal that was the source of the Supreme Court's oft-cited footnote in Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394 (1981), stating that "[t]he dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits,'" id. at 399 n.3, was likewise a dismissal of "all of the actions 'in their entirety,'" id. at 396.

Courts generally assume that the finality requirements in the two spheres are interchangeable, 18A Wright, Miller & Cooper, <u>Federal Practice and Procedure: Jurisdiction 2d</u> § 4432 & n.3, at 53, § 4434 & n.28, at 128 (2002) (collecting cases), and this approach enhances predictability and avoids confusion.

The Restatement does contemplate a possible softening of the traditional final judgment requirement in certain cases involving issue preclusion. Restatement (Second) of Judgments § 13 cmts. b, g. There is some case law support for this view. <u>See, e.g.</u>, <u>Lummus Co.</u> v. <u>Commonwealth Oil Refining Co.</u>, 297 F.2d 80, 89 (2d Cir. 1961) (Friendly, J.), <u>cert. denied</u>, 368 U.S. 986 (1962). However, while its language on the matter is not crystal clear, the Restatement appears to adhere to the conventional finality test for merger and bar. <u>See</u> Restatement (Second) of Judgments § 13 & cmt. b. While Wright, Miller and Cooper recognize that this may produce some incongruities in some circumstances, they too appear generally to support this approach. <u>See</u> 18A Wright, Miller & Cooper, <u>Federal Practice and Procedure: Jurisdiction 2d</u> § 4434 & nn. 28-30, at 128-30.

There might be cases that would tempt a court to apply a more flexible approach to defining finality for federal claim preclusion purposes. Imagine, for example, that shortly before the present case, another district court had completed a lengthy trial of AVX's Robinson-Patman claim and entry of a final judgment was

awaiting only the disposition of other claims; at that point the argument for giving the other court's ruling claim-preclusive effect might appear to be a strong one. Indeed, one could construct an entirely separate jurisprudence of finality for res judicata responsive to its purposes rather than to concerns governing immediate appealability vel non.

But every such deviation from the finality test used for appealability purposes has a cost, namely, the uncertainty created by having two different finality tests; it is not clear that much would be gained; and there are some policy reasons for a single test. In particular, an interim order that is not accompanied by an express entry of final judgment "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R. Civ. P. 54(b); see also, e.g., United States v. Arkansas, 791 F.2d 1573, 1576 (8th Cir. 1986). In all events, nothing in the present facts suggests that this is a case for an innovating departure from the prevailing final judgment requirement for federal claim preclusion.

Cabot's position in this case is further weakened by the dismissal of the entire original federal action without prejudice by stipulation of the parties. The district court took the view that at the point that this occurred, "there was no remaining federal claim in the lawsuit." But this assumes the premise; the Robinson-Patman claim was in some sense still in the law suit (the

dismissal could have been reconsidered or eventually appealed) and in some sense out (absent reconsideration by the judge, it could not have been pursued at trial without an amendment to the complaint--and the original time set for amending had expired).

What was dismissed without prejudice was "the action" in which a Robinson-Patman claim had been asserted. If the stipulation is taken at face value, it is easy enough to read it as encompassing all claims asserted in the law suit at any stage; Cabot would certainly have been aggrieved if, as soon as the stipulation were signed, AVX had sought entry of a final judgment on the Robinson-Patman claim and then attempted to appeal that dismissal. In one earlier case we said as to a voluntary dismissal:

> Absent explicit conditions to the contrary, the prior proceedings became a nullity. We agree with the [In re] Piper [Aircraft Distrib. Sys. Antitrust Litig., 551 F.2d 213 (8th Cir. 1977)] and [Cabrera v. Municipality of Bayamon, 622 F.2d 4 (1st Cir. 1980)] panels that, once an action has been voluntarily discontinued, all markings are erased and the page is once again pristine.

Sandstrom v. ChemLawn Corp., 904 F.2d 83, 86 (1st Cir. 1990); see also Piper, 551 F.2d at 219 (voluntary dismissal without prejudice under Fed. R. Civ. P. 41(a)(1)(i) "carries down with it previous proceedings and orders in the action, and all pleadings, both of plaintiff and defendant, and all issues, with respect to plaintiff's claim" (internal quotation mark omitted)). Whether or

not there are qualifications to this generalization, Cabot does not explain how it is to be reconciled with the district court decision in this case.

Admittedly, the parties almost surely did not expect that the Robinson-Patman claim was ever going to be resurrected in this law suit or any other. If Cabot had insisted, AVX might well have agreed that the stipulation be drafted to say that the dismissal was without prejudice except that the Robinson-Patman claim was dismissed with prejudice. But Cabot did not so insist. However the stipulation is read, it certainly does not itself constitute a dismissal of the Robinson-Patman claim with prejudice; at best, it leaves Cabot free to argue that the original dismissal was a final judgment--a position we have rejected.

Of course, AVX has not sought to resurrect the Robinson-Patman claim; what Cabot is losing is the arguable ability to foreclose other antitrust claims (under the Sherman and Clayton Acts) on which the district court never pronounced. It is hard to shed too many tears for Cabot because it now has to defend against claims not previously resolved on the merits at all. In the unlikely event that AVX sought to assert the Robinson-Patman claim now--which it has not attempted--the district judge would likely make short work of the effort.

Rather, the real loser in this instance is the interest in judicial efficiency that lies behind the replacement of the

-13-

common law rule defining claims narrowly with the present transactional test. See Apparel Art Int'l, 48 F.3d at 583 (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)); see also Bay State HMO Mgmt., Inc. v. Tingley Sys., Inc., 181 F.3d 174, 181-82 (1st Cir. 1999), cert. denied, 528 U.S. 1187 (2000). Rule 41(a)(1)(ii) evidently permits parties to circumvent this interest for reasons of their own by dismissing without prejudice and without the district court's consent. There is no limit on when such a stipulation can be filed, and it could easily occur after the court had done considerable work on an action.

But one side usually has an interest in resisting such an unqualified dismissal without prejudice as to any claim on which it effectively prevailed (albeit short of final judgment), since otherwise the case can later be resurrected. Further, there is some interest in letting the parties agree to halt litigation, and even if there is a net loss in efficiency in a particular case, it was up to those who framed and approved Rule 41 to balance efficiency for the court against party autonomy.

There is relatively little circuit case law on the problem posed in this case. A Seventh Circuit case uses the same approach we have adopted and so supports our position. See Gilbert v. Braniff Int'l Corp., 579 F.2d 411 (7th Cir. 1978) (involving dismissal with leave to amend). But the decision was analyzing the effect of an earlier decision in a state court where the

-14-

formalities of finality were somewhat different than those in a federal court; and it is worth noting that in the Seventh Circuit case a dissenting judge thought that res judicata should apply to bar the second action. Id. at 414 (Pell, J., dissenting).

Contrary to Cabot's contention, this case is not controlled by our prior decision in Kale. There, Kale brought a federal age discrimination suit in the district court together with associated state claims; when the district court found the federal claim barred by the statute of limitations, it dismissed the pendent state claims without prejudice--Kale having not troubled to press them based on diversity jurisdiction which unquestionably existed. Kale, 924 F.2d at 1163-64. When Kale then brought new state claims in state court, the employer removed the new action to federal court where the judge then invoked res judicata to dismiss the state claims and we affirmed. Id. at 1164, 1169.

In Kale, there was a final judgment adjudicating the federal claim and thus a traditional basis for the operation of res judicata. Kale, 924 F.2d at 1165. The district court in dismissing related state claims had said that this was without prejudice, but this court said that because the state claims could have been pursued in the first law suit based on diversity jurisdiction, ordinary res judicata rules applied to bar the new law suit on the same claims. Id. at 1166-67. In this case, there

-15-

is no final judgment on the Robinson-Patman claim so res judicata cannot operate.

The judgment of the district court is <u>vacated</u> and the matter <u>remanded</u> for further proceedings consistent with this decision. Costs are taxed in favor of the Appellants.

<u>It is so ordered</u>.