# United States Court of Appeals
## For the First Circuit

No. 07-2463

IVÁN NEGRÓN-FUENTES; MILDRED PÉREZ; the NEGRÓN-PÉREZ CONJUGAL PARTNERSHIP; YESENIA VERÓNICA NEGRÓN-PÉREZ, minor; IVÁN GABRIEL NEGRÓN-PÉREZ, minor,

Plaintiffs, Appellants,

v.

UPS SUPPLY CHAIN SOLUTIONS (f/k/a UPS LOGISTICS GROUP), BROADSPIRE (f/k/a KEMPER NATIONAL SERVICES), UNITED PARCEL SERVICES OF AMERICA, INC., UPS HEALTHCARE PLAN FOR PUERTO RICO, PRUDENTIAL INSURANCE COMPANY OF AMERICA,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. José Antonio Fusté,  U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Lipez, Circuit Judges.

William Santiago Sastre for appellants.
Pedro J. Manzano-Yates with whom María Isabel Rey-Cancio, Ada Nurie Pagán-Isona and Fiddler González & Rodríguez, PSC were on brief for appellees UPS Supply Chain Solutions, Broadspire, United Parcel Services of America, Inc., and UPS Healthcare Plan for Puerto Rico.
Javier G. Vázquez-Segarra with whom Luis F. Antonetti-Zequeira and Goldman Antonetti & Córdova, P.S.C. were on brief for appellee Prudential Insurance Company of America.

June 18, 2008

**BOUDIN**, **Circuit Judge**.  Ivan Negron-Fuentes worked in Puerto Rico as a technical services manager for UPS Supply Chain Solutions ("UPS-SCS"), a wholly owned subsidiary of United Parcel Service of America.  He had previously been employed (continuously from 1991) by a series of different companies, each of which was acquired or otherwise absorbed by the next, and ultimately became a UPS employee in 2001.  Negron participated in the UPS Health Care Plan for Puerto Rico ("the Plan"), established by UPS of America.

In May 2002, Negron was diagnosed with a rare type of brain tumor; on June 27 of that year, he was granted short-term disability leave (and benefits) and stopped working.  Medical operations followed and were mostly successful, but Negron soon began to suffer from severe depression--in part, he says, because various comments by co-workers and observations made while visiting the office led him to conclude that UPS-SCS did not want him back.

As the short-term leave period of one year began to reach its close, Negron was invited by the Plan's third-party claims administrator (Kemper National Services) to apply for long-term disability benefits.[1]  Negron understood that he faced a choice: seek reinstatement--which had to be done within the short-term leave period, during which time UPS-SCS was reserving his position--or accept the long-term disability benefits and face termination.

---

[1]At some point, Kemper National Services changed its name to Broadspire, but for clarity we refer to Kemper throughout.

After being informed by Kemper on May 20, 2003, that he was approved for long-term benefits, Negron chose to proceed with that alternative. He returned his office keys and was terminated by UPS-SCS on June 28, 2003, just after his year of short-term leave expired and never having formally requested reinstatement.

But he never received the benefits. Instead, he was informed by letter in August 2003 that an error had been made: Negron had not "vested" in the Plan for purposes of receiving long-term disability benefits. Apparently, there had been some confusion over whether Negron's pre-2001 tenure with the various companies acquired by the UPS enterprise counted toward his vesting requirements. Negron says he then contacted UPS-SCS, his former employer, but was told it was too late to reclaim his old position.

In June 2004, Negron (along with his wife and children) filed his first complaint against UPS-SCS, in Puerto Rico Superior Court; relying on Puerto Rico law, he sought tort damages both for unjust dismissal and for depression arising from the "error" by his employer that "left him bereft of long term disability benefits and without a job." UPS-SCS removed the case to federal court on the grounds that the latter cause of action was "completely preempted" by the enforcement provision of ERISA, 29 U.S.C. § 1132(a) (2000), the federal law governing employee benefit plans, and therefore stated a removable federal claim. 28 U.S.C. § 1441(b) (2000).

Once in federal court, Negron amended his complaint in significant ways. The amended complaint, filed in December 2004, included four causes of action: a federal claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 (2000), and three claims under various Puerto Rico laws. All four alleged wrongful termination--under the ADA because the motivating factor was Negron's disability, and under Puerto Rico law because UPS-SCS allegedly acted without just cause and did not reserve Negron's position as required by statute. Although the complaint retained the factual details regarding the long-term disability benefits and their retraction, it did not seek to collect those benefits.

UPS-SCS filed for summary judgment. In December 2005, the federal district court granted that motion in part, dismissing Negron's ADA claim on the merits. The court found, after drawing inferences in his favor, that Negron was not capable of performing the essential functions of his job, even with reasonable accommodation; without such capability, an ADA claim cannot succeed. Jacques v. Clean-Up Group, Inc., 96 F.3d 506, 511 (1st Cir. 1996). The supplemental claims under Puerto Rico law were dismissed without prejudice. See 28 U.S.C. § 1367(c). We will refer to this judgment as Negron I.

The litigation then followed a peculiar course. Although the federal court had dismissed the Puerto Rico claims without prejudice, Negron (perhaps concerned about statutes of limitations)

-4-

did not re-file them in Puerto Rico Superior Court but instead sought to "reopen" the original case filed in Puerto Rico Superior Court and thereafter removed and dismissed by the federal court. UPS-SCS opposed that maneuver but unsuccessfully; the Puerto Rico trial and appellate courts allowed the case to be reopened.

Negron filed in August 2006 a new complaint in that reopened action, stating seven causes of action:

- the first sought damages for negligence under article 1802 of the Puerto Rico Civil Code;

- the second, third and fourth alleged wrongful termination under three different Puerto Rico statutes;

- the fifth alleged wrongful termination in violation of the Puerto Rico Constitution;

- the sixth argued that UPS-SCS should be estopped, based on the representations Kemper had made to Negron, from retracting his long-term disability benefits; and

- the seventh alleged that he was entitled to a lump-sum payment of some kind from the Plan's life insurance component.

Once again, the defendants removed the case to federal district court, arguing that the latter two claims (and possibly the first claim as well) were "completely preempted" by ERISA and thus removable, even though the complaint purported to raise only Puerto Rico law claims. Negron opposed removal and requested a remand, but the federal court determined that the case had been properly removed.

-5-

Negron then filed yet another amended complaint in the newly removed, and now federal, case; the only pertinent change was an explicit invocation of federal law in claim six, the estoppel-based benefits claim. He also named four additional defendants: UPS of America (his former employer's parent company, and the sponsor of the Plan); the Plan itself; Kemper (the third-party claims administrator for the medical component of the Plan); and Prudential Life Insurance (the administrator of the Plan's life insurance component).

Both sides filed motions for summary judgment. Ultimately, the district court (in a judgment we will call Negron II) disposed of the claims in the following manner:

> •the three claims (two through four) alleging wrongful termination under Puerto Rico statutes were dismissed by application of issue preclusion from the previous federal judgment;
>
> •the Puerto Rico constitutional claim and the two benefits claims (claims five through seven) were dismissed by applying claim preclusion based on the previous federal judgment; and
>
> •the first claim, under article 1802 of the Puerto Rico Civil Code, was dismissed without prejudice after the court declined to exercise supplemental jurisdiction.

Negron now appeals from the judgment in Negron II. He argues first that the federal court never had subject matter jurisdiction over the case because removal was improper; and second, that the court was wrong to dismiss his claims based on res

-6-

judicata.[2]  We consider his arguments in turn, seeking to untangle an array of claims under different sets of federal and local laws.

Jurisdiction and Removal.  The jurisdictional dispute turns on whether any of the claims in Negron's August 2006 complaint (his second go-around in Puerto Rico court) were properly removable to federal court.  But before we reach that question, we must consider whether Negron has waived his right to contest removal.

Defendants say that when Negron last amended his complaint--after the district court had satisfied itself that the second removal was proper and denied the motion to remand--he himself invoked federal jurisdiction and thereby cured any defect, waiving his objection to being in federal court.  Negron did, in fact, amend his complaint to clarify that his estoppel claim rested in part on federal law.  But we think the waiver argument is unpersuasive on these facts.

We did hold, in Brough v. United Steelworkers of America, 437 F.2d 748 (1st Cir. 1971), where a plaintiff added an additional federal claim to his complaint after his remand motion was denied, that one could not "invoke the jurisdiction of the federal court, and then disclaim it when he loses." Id. at 750.  That amendment in effect remedied any jurisdictional flaw because it stated a new

_____

[2]Res judicata is an umbrella term encompassing both issue preclusion (traditionally known as collateral estoppel) and claim preclusion (the traditional phrase is merger and bar). AVX Corp. v. Cabot Corp., 424 F.3d 28, 30 (1st Cir. 2005).

-7-

claim that "obviously" arose under federal law and thus provided a distinct, uncontested basis for federal jurisdiction.  Id.

But Negron did not add any distinct federal claims; he amended his complaint only to conform to a determination (described below) already reached by the district court--that claim 6 of his complaint was actually a federal claim in disguise.  The amendment made no difference because when a purportedly state law claim is "completely preempted" and therefore federal in substance, the case can proceed on that theory without amendment.  Fitzgerald v. Codex Corp., 882 F.2d 586, 589 (1st Cir. 1989); accord Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992).

The amendment had no effect (and conferred no benefit on Negron), so we do not take it as a purposeful invocation of federal jurisdiction as in Brough.  Indeed, Negron may have feared that the district court would dismiss the case if he did not make the conforming amendment--as is the practice in some other circuits, e.g., Stewart v. U.S. Bancorp, 297 F.3d 953, 959 (9th Cir. 2002). And, if amendment were required, treating it as a waiver would force the party to forego his objection or face dismissal and then a res judicata bar if that objection failed on appeal.

The issue, then, is whether UPS-SCS was entitled to remove the reopened case.  The ordinary rule is that the plaintiff is master of his complaint and that a case cannot be removed if the complaint's allegations are premised only on local law.  Hotz v.

-8-

Blue Cross, 292 F.3d 57, 59 (1st Cir. 2002).  The well-pleaded complaint rule holds that such a case does not arise under federal law for purposes of federal question jurisdiction and so cannot be removed even if the defendant's defense is rooted in federal law.[3] But, as usual, there are qualifications.

Pertinently, certain state claims are subject to removal, even if they purport to rest only on state law, because the subject matter is powerfully preempted by federal law, which offers some "substitute" cause of action.  Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 66-67 (1987); Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 559-60 (1968).  The articulation--theory is too kind a term--is that these are federal claims in state law clothing and, to defeat artful pleading, the district court can simply "recharacterize" them to reveal their true basis.  The phrase "complete preemption" is sometimes used to describe this doctrine.

None of the claims in Negron's August 2006 complaint mentioned any federal statute; all purported to be based on Puerto Rico law.  But UPS-SCS argued that some of the claims fell within the scope of section 502(a)(1)(B) of ERISA, which creates a cause of action for a participant in an employee benefit plan governed by ERISA "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B).  And the Supreme Court has held that this

---

[3]28 U.S.C. § 1441(b); Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 9-10 (1983); Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149 (1908).

provision does displace related state law causes of action, triggering complete preemption and allowing for removal. Metro. Life, 481 U.S. at 66.

Removability thus turns on whether any of Negron's claims--the sixth or seventh, in particular--are in substance duplicated or supplanted by the ERISA cause of action (in which case removal based on complete preemption is proper) or instead whether all are directed at violation of a "legal duty . . . independent of ERISA or the plan terms," Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004), thus defeating removal. Answering this question for Negron's sixth claim, which demands that disability benefits be paid because of "estoppel" principles, might not be straightforward.[4]

But any of Negron's claims, if completely preempted, can support removal of the entire action: the rest can be removed as provisionally within a federal court's supplemental jurisdiction. 28 U.S.C. §§ 1367(a), 1441(c). And his seventh claim, which asserted entitlement to a lump-sum payment from the Plan, fell squarely within the scope of ERISA's enforcement provision because it directly sought "to recover benefits due to him under the terms of his plan."

---

[4]Defendants say that the claim seeks ERISA benefits from an ERISA plan on behalf of an ERISA plan participant and, therefore, duplicates section 502(a); Negron that the benefits are merely tort damages due for the misrepresentations. Compare Felix v. Lucent Techs., Inc., 387 F.3d 1146, 1162 (10th Cir. 2004), cert. denied, 545 U.S. 1149 (2005), with Law v. Ernst & Young, 956 F.2d 364, 370 n.9 (1st Cir. 1992).

Negron insists that the seventh claim does not raise substantial questions of federal law, but that is not the test. Any claim replicating section 502(a) is a federal claim for jurisdictional purposes, whether substantial or not. Cf. Am. Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916). Nor does it matter that state courts have concurrent jurisdiction over ERISA claims; choice of forum where federal jurisdiction can attach to a case filed in state court belongs to the defendant, who here elected to remove. So removal here was proper and we turn to the district court's disposition.

Issue Preclusion. The district court in its Negron II judgment dismissed three of Negron's claims (claims 2, 3 and 4)--all based on Puerto Rico employment statutes--by giving issue preclusive effect to two findings of fact from Negron I: that Negron was unable to perform the essential functions of his job, and that UPS-SCS reserved his position for one year. Negron now mounts a series of attacks on the application of issue preclusion to this case.

In general terms and with various exceptions, issue preclusion renders conclusive the determinations reached in previous law suits between the same (and, sometimes, different) parties. See generally 18 Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 2d § 4401 et seq. (2002). Federal common law governs the application of issue preclusion here, because it is an earlier

federal judgment's preclusive effect at stake.  Hoult v. Hoult, 157 F.3d 29, 31 (1st Cir. 1998), cert. denied, 527 U.S. 1022 (1999).

Negron first argues that because his original Puerto Rico case was reopened, the judgment in Negron I was not "prior" to the current litigation and therefore lacks preclusive effect here.  This is wrong.  Whatever the merits of Negron's position that his claims in the instant case somehow relate back to his original complaint, filing dates are irrelevant for purposes of issue preclusion.  A final judgment, as in Negron I, has preclusive effect on any pending (or yet-unfiled) suits, regardless of the order of filing.  18 Wright, Miller & Cooper, supra, § 4404.

Negron does not make--and we would not accept--any suggestion that because the Puerto Rico courts reopened his case after removal and dismissal, the earlier federal judgment was not "final" for preclusion purposes.  A judgment is normally final if it disposes of all claims against all parties, AVX Corp. v. Cabot Corp., 424 F.3d 28, 31 (1st Cir. 2005), as Negron I did.  Whether or not the subsequent reopening was valid under Puerto Rico law, for our purposes Negron I was a final judgment on the merits that could govern in future litigation, including Negron II.

Next, Negron says that UPS-SCS should be barred by the equitable doctrine of "unclean hands" from invoking issue preclusion because (allegedly) the factual findings in Negron I were based on false assertions by UPS-SCS.  But this is just a collateral attack

-12-

on Negron I--precisely what issue preclusion is designed to avoid. Negron had a fair opportunity to litigate in the prior case, did not appeal the adverse determination despite an opportunity to do so, and no new information has since come to light.

Negron also invokes the decision of the district judge in Negron I to dismiss without prejudice at least some of those same claims. Dismissal without prejudice implies that litigation can continue, Negron says, so how could the judge's own findings have barred the claims? But the dismissal was merely a refusal to exercise supplemental jurisdiction over the claims and implies nothing about whether any defenses--including issue preclusion based on what was adjudicated on other claims--might bar them if pursued in further litigation.

Negron counters that issue preclusion cannot bar his claims because there were still disputed issues of fact. But as the district court explained, Negron I's factual findings entitled to preclusive effect legally doomed these three claims, regardless of whatever other, un-precluded facts might have been presented at trial. Negron says that the findings do not "automatically" bar other suits because "different entities and laws properly utilize different criteria" to evaluate, e.g., inability to work. But he fails to show or even argue that Puerto Rico uses different criteria here in any way that undermines the district court's analysis.

Claim Preclusion. The district court also dismissed three of Negron's claims--claim five, under the Puerto Rico Constitution, and claims six and seven, the arguable "ERISA claims"--under the claim preclusion branch of res judicata. Claim preclusion traditionally aimed to prevent plaintiffs from "splitting" causes of action, but now also operates as a kind of common-law compulsory joinder requirement, promoting judicial economy through the consolidation of related claims. AVX Corp., 424 F.3d at 31. The district court held that Negron should have brought these three claims in his first suit, Negron I, and, by failing to do so forfeited them.

One of Negron's objections to these dismissals has force, but first we clear away some underbrush. Negron says that UPS-SCS waived its claim preclusion arguments by not raising them in the litigation in Puerto Rico courts over his "reopening" of his original Superior Court suit; that the Puerto Rico courts actually rejected the claim preclusion arguments, a decision itself entitled to issue-preclusive effect; and that raising the claim preclusion arguments in federal court violates the Rooker-Feldman doctrine.

We disagree. The Superior Court litigation over whether Negron could reopen the removed and dismissed case did not turn on conventional res judicata principles at all, but rather on whether the federal dismissal without prejudice allowed for the Puerto Rico court to re-acquire jurisdiction over the removed case or whether

-14-

Negron was instead required to start afresh with a new action.[5]  At that stage of the proceedings, there was no reason (or basis) for UPS-SCS to assert its claim preclusion defenses; its failure to do so was therefore not a waiver.  And before anything more happened, the case was removed.

The same history confirms that the Puerto Rico court's judgment allowing reopening did not reject the claim preclusion argument now made by UPS-SCS which, as Negron himself admits, was never raised by UPS-SCS in the Puerto Rico court.  For the same reason, the Rooker-Feldman doctrine, which prevents litigants from asking "the District Court to overturn an injurious state-court judgment," Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 292 (2005), is not remotely implicated.

On the "merits" of the district court ruling, Negron focuses on the two ERISA claims.  In the district court, he argued that the Puerto Rico constitutional claim should not fall victim to claim preclusion because the court in Negron I would have dismissed it without prejudice anyway, as it did the other claims based on Puerto Rico law.  That argument is not without some support, see Restatement (Second) of Judgments § 25, cmt. e, ill. 10 (1982); Sattler v. Bailey, 400 S.E.2d 220, 226-27 (W. Va. 1990); but see

---

[5]Negron makes much of a single reference to res judicata in a UPS-SCS motion for an extension of time to file a response to Negron's motion to reopen the case.  But the reference was not on point, and neither UPS-SCS nor the court pursued it.

Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 404 (1981) (Blackmun, J., concurring), but we do not consider it or decide the issue because Negron has not pressed it on appeal.

However, applying claim preclusion to bar the two ERISA claims (one only arguably so but we will return to this later) is contested by Negron and here we think the district court erred. This is so even assuming dubitante--because Negron does not dispute the assumption--that the ERISA claims are sufficiently factually connected to the ADA claim from Negron I to satisfy the "relatedness" predicate for compulsory joinder (i.e., that all arose from the same "transaction, or series of connected transactions," Restatement (Second) of Judgments, supra, § 24).[6]

The problem begins with the fact that Negron's original suit was against only his employer, not the Plan or UPS of America or Kemper or Prudential.[7] While it is unclear here which (one or more) of these latter parties is the proper defendant in an ERISA suit--usually either the plan or the party who controls its

_____

[6]The circuits have divided in applying this fact-intensive test to similar cases. Compare King v. Union Oil Co. of Cal., 117 F.3d 443, 447 (10th Cir. 1997) (benefits claim and wrongful termination claim sufficiently related), with Herrmann v. Cencom Cable Assocs., Inc., 999 F.2d 223, 227 (7th Cir. 1993) (insufficient overlap between such claims to justify preclusion).

[7]In a supplemental brief, defendants object that Negron waived this point by failing to raise it on appeal, but Negron's brief does argue that he "did not have a full and fair opportunity to litigate" the ERISA claims, in part because Kemper, the Plan, Prudential and UPS of America "are indispensable parties" and had not been joined.

administration can be sued, <u>Terry</u> v. <u>Bayer Corp.</u>, 145 F.3d 28, 35-36 (1st Cir. 1998)--UPS-SCS is indisputably <u>not</u> a plan administrator, sponsor or fiduciary.  And an employer who is not an administrator is not otherwise a proper defendant in an ERISA benefits action. <u>Beegan</u> v. <u>Assoc. Press</u>, 43 F. Supp. 2d 70, 73 (D. Me. 1999).

Negron did not pursue his ERISA claims in his original action against UPS-SCS and could not properly have included them in his complaint against UPS-SCS.  It would markedly extend claim preclusion to hold nevertheless that the resolution of Negron's ADA claim against UPS-SCS precluded his later assertion of ERISA claims against legitimate defendants not sued in the original action.  <u>Cf.</u> <u>Adams</u> v. <u>IBM Personal Pension Plan</u>, 533 F. Supp. 2d 342, 344 (S.D.N.Y. 2008) (claim preclusion applied in new action where ERISA claim was previously asserted against improper party who successfully defended on the merits).

Admittedly, claim preclusion can sometimes operate in favor of a party--<u>e.g.</u>, one in privity with or closely related to a defendant from the original action--who was not named in the previous law suit.  <u>See</u> <u>In re El San Juan Hotel Corp.</u>, 841 F.2d 6, 10 (1st Cir. 1988).  For example: where some alleged conspirators are sued in the first (unsuccessful) action and the remainder in a second suit based on the same allegations, <u>Gambocz</u> v. <u>Yelencsics</u>, 468 F.2d 837, 841-42 (3d Cir. 1972), or when a government is sued first (unsuccessfully) and officers in their personal capacities

-17-

sued afterwards on the same theory, Mandarino v. Pollard, 718 F.2d 845, 850 (7th Cir. 1983), cert. denied, 469 U.S. 830 (1984).  But, again, this has usually occurred where the claims were or could have been brought against the original defendant in the original suit. Neither condition is satisfied here.

The judicial expansion of claim preclusion doctrine, especially along its party dimension, is still a work in progress. See 18A Wright, Miller & Cooper, supra, § 4464.1.  Yet it has not gone unchecked.  E.g., Taylor v. Sturgell, No. 07-371, slip op. (U.S. June 12, 2008).  And compulsory claim or party joinder rules, created by courts outside the framework of the Federal Rules of Civil Procedure, have dangers as well as advantages.  It is enough to say here that the ERISA claims were not brought and could not properly have been brought against the only defendant in Negron I.

Exactly who among the defendants is the proper defendant (or defendants) for any ERISA claim is for the district court to work out on remand, along with the merits.  But we affirm the dismissal of the ERISA claims against UPS-SCS because (as explained) it is not the proper defendant and we can affirm on any ground manifest in the record.  Plymouth Sav. Bank v. IRS, 187 F.3d 203, 209 (1st Cir. 1999).

In this discussion of res judicata we have referred to claims 6 and 7 as the "ERISA claims" even though we above declined to decide whether claim 6 was necessarily a "completely preempted"

-18-

claim under ERISA.  See note 4, above.  To the extent that claim 6 is simply a state law claim, the district court did not err by dismissing it as precluded.  So we are concerned with it only to the extent that it states an ERISA claim and that is how we (and the district court on remand) should treat it.

To spell this out, the district court must decide whether a claim of the kind described in count 6--namely, for benefits mistakenly promised by a plan's claims administrator--can successfully be made out under ERISA on these facts.  See Livick v. Gillette Co., 524 F.3d 24, 31 (1st Cir. 2008); Green v. Exxonmobil Corp., 470 F.3d 415, 420 (1st Cir. 2006).  If so, such a claim is properly preserved and now before the district court on remand.

The dismissals of claims two, three and four are affirmed; the dismissals of claims six and seven are vacated except as against UPS-SCS; the dismissal of claim one is also vacated (because now that two federal claims are being remanded the district court may wish to reconsider its decision as to supplemental jurisdiction); and the case is remanded for further proceedings consistent with this decision.  Each side shall bear its own costs on appeal.

It is so ordered.