

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Presidential Financial Corp. Of Florida<br><br>    Peticionario<br><br>       v.<br><br>Transcaribe Freight Corp.<br><br>    Recurrido | Certiorari<br><br>2012 TSPR 122<br><br>186 DPR ____ |

Número del Caso: CC-2010-494

Fecha: 18 de julio de 2012

Tribunal de Apelaciones:

      Región Judicial de Carolina

Abogados de la Parte Peticionaria:

      Lcda. Hilda Quiñones Rivera
      Lcdo. Fabián Rodríguez Torres

Abogado de la Parte Recurrida:

      Lcdo. Pedro J. Torres Marcano
      Lcdo. Luis N. Blanco Matos

Materia: Procedimiento Civil – Doctrinas de cosa juzgada, e impedimento colateral en su modalidad de fraccionamiento de causa da acción; aplicación interjurisdiccional de dicha doctrina.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Presidential Financial
Corp. of Florida

   Peticionario

        v.                 CC-2010-494    Certiorari

Transcaribe Freight Corp.

   Recurrido



Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo


San Juan, Puerto Rico, a 18 de julio de 2012.

En el presente caso nos corresponde determinar si cuando un demandado levanta en su primera alegación responsiva, la defensa afirmativa de cosa juzgada en su modalidad de impedimento colateral, se debe entender que igualmente levantó la modalidad de fraccionamiento de causa de acción.

Asimismo, se nos brinda la oportunidad de aclarar la doctrina de cosa juzgada en su modalidad de fraccionamiento de causa de acción, así como expresarnos sobre la aplicación interjurisdiccional y la jurisdicción suplementaria (accesoria) en el foro federal, de dicha doctrina.

Por entender que el Tribunal de Apelaciones erró en sus determinaciones, revocamos la sentencia recurrida. Pasemos, pues, a exponer los hechos que dieron origen a la controversia planteada en el caso de epígrafe.

I

Las partes involucradas en este litigio son la peticionaria Presidential Financial Corp. of Florida (Presidential) y la recurrida Transcaribe Freight Corp. (Transcaribe). Presidential es una corporación domiciliada en el estado de Georgia, que se dedica a ofrecer servicios de financiamiento comercial. Transcaribe es una corporación organizada y existente bajo las leyes del estado de Delaware, con operaciones en Puerto Rico, que se dedica al transporte y almacenamiento de mercancía y bienes.

El 6 de julio de 2005 Presidential concedió un préstamo de capital de trabajo a International World Imports & Exports, Inc. (International World) por $1,500,000.[1] International World es una corporación domiciliada en Puerto Rico, que se dedica a la importación y exportación de productos. Miguel Toyéns (Toyéns), presidente de International World, representó a dicha corporación en la transacción con Presidential y sirvió de garantizador del repago de la deuda. International World le indicó a Presidential que estaba pendiente de recibir 890 transformadores eléctricos en

---

[1] Apéndice de la Petición de *certiorari*, págs. 82-90.

las facilidades de Transcaribe, y para poder liberar los mismos tenía que pagar a Transcaribe una cierta suma de dinero. Presidential solicitó evidencia sobre dicha deuda a International World. Acorde con lo anterior, Toyéns entregó a Presidential un documento titulado "Bill of Lading"[2] P-0315 de Transcaribe por la suma de $1,000,496.10, el cual resultó ser falso.[3]

El 15 de julio de 2005 Presidential efectuó dos transferencias electrónicas a la cuenta bancaria de Transcaribe por $1,000,496.10 y $475,503.[4] El 18 de julio de ese mismo año, Transcaribe, por instrucciones de Toyéns, giró un cheque por $1,000,496.10 a favor de International World,[5] con el conocimiento de que para esa fecha ni Toyéns ni International World adeudaban cantidad alguna a la corporación. Dos meses más tarde, nuevamente por instrucciones de Toyéns, Transcaribe giró un cheque por $475,503 a favor de Toyéns en su carácter personal.[6] A pesar de tratarse de un depósito millonario inusual, Transcaribe realizó dichos desembolsos sin hacer gestión

---

[2] "Bill of Lading" es un documento efectuado por un transportista (compañía de camiones, ferrocarril, barco o buque de carga de aire) acusando recibo de las mercancías y especificando el acuerdo para el transporte de la mercancía a un destino indicado. Enciclopedia Británica, http://www.britannica.com/EBchecked/topic/327501/bill-of-lading (última vista el 30 de marzo de 2012).

[3] Apéndice de la Petición de *certiorari*, pág. 74.

[4] Íd., pág. 75.

[5] Íd., págs. 78-79.

[6] Íd., págs. 80-81.

alguna para comunicarse ni obtener instrucciones de Presidential.[7]

En octubre de 2005, personal de Presidential viajó a Puerto Rico para indagar sobre la falta de pago del préstamo concedido a International World. En ese momento Presidential se percató de los desembolsos que realizó Transcaribe a International World y a Toyéns. Presidential acudió a las oficinas de Transcaribe y los confrontó con el "Bill of Lading" P-0315 que International World le había entregado. Transcaribe comparó el documento con los récords de la empresa y confirmó que era falso.[8]

Ante esta situación, el 13 de octubre de 2005 Presidential presentó una demanda en cobro de dinero contra International World y Toyéns, en el Tribunal Federal para el Distrito de Puerto Rico (Tribunal Federal).[9] El foro federal asumió jurisdicción de esa causa de acción por existir diversidad de ciudadanía.[10] En dicho pleito Presidential recuperó parcialmente los

[7] Cabe señalar, que Transcaribe no pudo justificar ninguno de los desembolsos, salvo que Toyéns le pidió que los hiciera.

[8] Toyéns falsificó una factura emitida por Transcaribe dirigida a éste en marzo de 2005 por $100, por concepto de almacenaje de mercancía. Esta deuda fue pagada el 2 de junio de 2005.

[9] Presidential Financial Corp. v. International World Imports & Exports, et al., Civil Num. 05-2087.

[10] Es importante señalar, que distinto al foro estatal que es de jurisdicción general, el foro federal es de jurisdicción limitada. Quiere decir, que el Tribunal Federal puede asumir jurisdicción en una causa de acción únicamente por:
      1) cuestión federal – cuando la causa de acción surge de la Constitución, ley o tratado federal; o
      2) diversidad de ciudadanía – cuando la causa de acción surge de un estatuto estatal, pero el demandante reside en un estado distinto al que reside el demandado y la cuantía envuelta excede de $75,000.

fondos que éstos no habían pagado. La suma no recuperada por Presidential mediante dicha demanda asciende a $838,302.05.

Así las cosas, el 25 de septiembre de 2006, Presidential presentó una demanda en el Tribunal de Primera Instancia, Sala Superior de Carolina, contra Transcaribe. En la misma solicitó la indemnización por actos y/u omisiones negligentes y/o culposos realizados por Transcaribe que le ocasionaron daños y perjuicios.[11] En la demanda, la peticionaria planteó que Transcaribe incurrió en negligencia al no contactar ni comunicarse con Presidential para indagar sobre las razones de la transferencia millonaria realizada, conociendo que no correspondían a ninguna suma adeudada. Indicó, además, que en ausencia de deuda Transcaribe debió actuar diligentemente y comunicarse con Presidential para solicitar instrucciones en cuanto al destino de los fondos transferidos. Alegó, que a raíz de esas actuaciones y/u omisiones negligentes y/o culposas sufrió daños y pérdidas económicas que se estiman en $838,302.05. De esta forma, la peticionaria pidió al tribunal de instancia que dictara sentencia en contra de Transcaribe.

El 13 de febrero de 2007 Transcaribe contestó la demanda. Entre sus defensas afirmativas levantó la

---

[11] Al amparo del art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141.

defensa de impedimento colateral por sentencia.[12]  Luego, el 30 de junio de 2008 Transcaribe presentó una moción de sentencia sumaria.[13]  Por primera vez, en dicha moción, Transcaribe mencionó la defensa de fraccionamiento de causa de acción, pero no fundamentó la misma.[14]  Finalmente, el tribunal celebró el juicio en su fondo y declaró con lugar la demanda.  Así, ordenó a Transcaribe a pagar los daños ocasionados y le impuso el pago de intereses por temeridad.  En particular, el Tribunal de Primera Instancia expresó que Transcaribe, al recibir fondos que no tenía derecho a cobrar y en ausencia de instrucciones por parte de Presidential, debió actuar con la diligencia de un buen padre de familia.[15]  A su vez, el foro de instancia indicó que la obligación y el deber de Transcaribe antes de entregar los fondos a International World era indagar sobre su origen y obtener instrucciones del depositante previo a su disposición.[16]

---

[12]  Además, levantó las siguientes defensas afirmativas: (1) las aseveraciones en la demanda no exponen una reclamación que justifique un remedio, (2) causa de acción está prescrita, (3) remedios solicitados no proceden como cuestión de hecho y de derecho, (4) no existe nexo causal entre los daños y la reclamación alegada, (5) los daños son consecuencia de sus propios actos, (6) los daños y reclamaciones alegadas en la demanda se debieron exclusivamente a terceras personas, (7) no procede conforme a la doctrina de actos propios, (8) demandantes no actuaron de forma diligente, (9) daños reclamados son excesivos, (10) demandante no mitigó los daños, (11) demandante actuó de mala fe, y (12) negligencia comparada.

[13]  No surge del expediente que determinación, si alguna, tomó el Tribunal de Primera Instancia en cuanto a la sentencia sumaria.

[14]  Apéndice de la Petición de *certiorari*, pág. 37.

[15]  Íd., pág. 58.

[16]  Íd.

Inconforme, con la sentencia del Tribunal de Primera Instancia, Transcaribe presentó una moción de reconsideración. En la misma levantó la defensa de cosa juzgada en su modalidad de fraccionamiento de causa y por primera vez fundamentó la misma. Transcaribe alegó que el caso de autos se basa en los mismos hechos que dieron lugar a la demanda en el Tribunal Federal, por lo que Presidential tenía la obligación de incluir en la demanda federal a todo demandado que entendía que le podía ser responsable.[17] El foro de instancia declaró no ha lugar la moción de reconsideración. En vista de lo anterior, Transcaribe presentó un recurso de apelación ante el Tribunal de Apelaciones en el cual solicitó la revocación de la sentencia del Tribunal de Primera Instancia. Mientras, la aquí peticionaria, Presidential, presentó su alegato y solicitó la confirmación de la decisión recurrida.

Expedido el auto, el Tribunal de Apelaciones revocó la determinación del foro de instancia y ordenó la desestimación de la causa de acción. Esto, fundamentado en su interpretación de la doctrina de cosa juzgada en su modalidad de fraccionamiento de causa de acción. El foro apelativo intermedio indicó que en la demanda llevada ante el Tribunal Federal Presidential no incluyó a Transcaribe como parte, teniendo conocimiento de su

---

[17] Apéndice de la Petición de *certiorari*, pág. 68.

participación en los hechos que basó su reclamación.[18] En

su sentencia el Tribunal de Apelaciones señaló lo

siguiente:

> **Habida cuenta de la exacta identidad entre las partes y la causa de acción,** advenida luego sentencia final adjudicando en los méritos las controversias, Presidential está impedido ahora de incoar nueva acción contra Transcaribe en el Foro local **para reclamar lo mismo que reclamó a nivel federal y por los mismos fundamentos que allí esgrimió.** (Énfasis suplido.)[19]

En desacuerdo con la decisión del Tribunal de

Apelaciones, Presidential solicitó reconsideración, mas

ese foro denegó su petición. Así, la peticionaria

recurrió ante esta Curia mediante una solicitud de

*certiorari*, en la que señaló los siguientes errores:

> **(1) Erró el Tribunal de Apelaciones al desestimar la causa de acción incoada por Presidential contra Transcaribe por entender que la sentencia en un caso en cobro de dinero en el Tribunal Federal donde Transcaribe no fue parte constituye cosa juzgada, aunque entre el pleito federal y el pleito estatal no existe identidad de causas ni identidad de partes.**
>
> **(2) Erró el Tribunal de Apelaciones al concluir que la falta de sustitución de una parte acumulada bajo un nombre ficticio en un pleito federal constituye un impedimento por razón de fraccionamiento indebido de la presente acción, aunque entre el pleito federal y el pleito estatal no existe identidad de causas ni identidad de partes**
>
> **(3) Erró el Tribunal de Apelaciones al desestimar la causa de acción incoada por Presidential contra Transcaribe por entender que la sentencia en un caso en cobro de dinero en el Tribunal Federal constituye impedimento colateral por sentencia, aunque entre el pleito federal y el pleito estatal no existe identidad**

---

[18] Íd., pág. 425.

[19] Apéndice de la Petición de *certiorari*, pág. 425.

> **de partes y a pesar de que Presidential
> prevaleció en el pleito federal.**[20]

Visto el recurso presentado,[21] dictamos una Resolución en la que le concedimos a la parte recurrida, Transcaribe, un término de 30 días para que compareciera y mostrara causa por la cual no debíamos revocar la Sentencia dictada por el Tribunal de Apelaciones. Transcaribe presentó un escrito en cumplimiento a nuestra orden, y así, con el caso debidamente perfeccionado procedemos a expedir y resolver el recurso.

II.

**A. Doctrina de cosa juzgada y sus modalidades de impedimento colateral y fraccionamiento de causa de acción**

En nuestro ordenamiento jurídico, la doctrina de cosa juzgada se encuentra tipificada en el Art. 1204 del Código Civil.[22] El referido artículo dispone, en lo pertinente, lo siguiente:

> Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron.

El tratadista español Manresa define la doctrina antes citada como "lo ya resuelto por fallo firme de un

---

[20] Es importante destacar, que aunque el Tribunal de Apelaciones explicó la doctrina de impedimento colateral por sentencia en sus fundamentos, no desestimó la causa de acción al amparo de esa doctrina. Por lo tanto, no entraremos a discutir este error.

[21] Atendida la solicitud de *certiorari* se le proveyó no ha lugar por incumplimiento al Reglamento. Así las cosas, el peticionario presentó una moción de reconsideración.

[22] 31 L.P.R.A. sec. 3343.

Juez o Tribunal competente, y lleva en sí la firmeza de su irrevocabilidad".[23]  Por lo tanto y a tenor con lo anterior, la doctrina de cosa juzgada "persigue poner fin a los litigios luego de haber sido adjudicados de forma definitiva por los tribunales y, de este modo, garantizar la certidumbre y la seguridad de los derechos declarados mediante una resolución judicial para evitar gastos adicionales al Estado y a los litigantes".  Worldwide Food Dis., Inc. v. Colón et al., 133 D.P.R. 827, 833-834 (1993).

La doctrina de cosa juzgada es valiosa y necesaria para la sana administración de la justicia.  Por un lado, vela por el interés gubernamental de que se finalicen los pleitos y, por otro lado, se interesa en no someter a los ciudadanos a las molestias de tener que litigar dos veces una misma causa.[24]  Sin embargo, la aplicación de dicha doctrina no procede de forma inflexible y automática cuando hacerlo derrotaría los fines de la justicia o consideraciones de orden público.[25]

Como bien dispone el Art. 1204, *supra*, la presunción de cosa juzgada sólo tendrá efecto si existe la más perfecta identidad de las cosas, las causas, las personas

---

[23] S.L.G. Szendrey-Ramos v. Consejo de Titulares, res. 29 de diciembre de 2011, 2011 T.S.P.R. 206, 184 D.P.R. ___ (2011), citando a J.M. Manresa, Comentarios al Código Civil Español, 6ta ed. rev., Madrid, Ed. Reus, 1967, T. VIII, Vol. 2, pág. 278.

[24] Fonseca et al. v. Hosp. HIMA, res. 5 de enero de 2012, 2012 T.S.P.R. 3, 184 D.P.R. ___ (2012); P.R. Wire Prod. v. C. Crespo & Assoc., 175 D.P.R. 139 (2008).

[25] Fonseca et al. v. Hosp. HIMA, *supra*; Parrilla v. Rodríguez, 163 D.P.R. 263 (2004).

de los litigantes y la calidad con que lo fueron.   A
continuación analizamos cada elemento de esta doctrina.

A los fines de aplicar la doctrina de cosa juzgada,
el requisito de la identidad de cosas significa que el
segundo pleito se refiere al mismo asunto que versó el
primer pleito, aunque las cosas hayan sufrido disminución
o alteración.[26]   La cosa es el objeto o materia sobre la
cual se ejercita la acción.   A & P Gen. Contractors v.
Asoc. Caná, 110 D.P.R. 753 (1981).   Un criterio certero
para determinar si existe identidad del objeto es, si un
juez está expuesto a contradecir una decisión anterior
afirmando un derecho nacido o naciente.[27]   Quiere decir,
que existe identidad de objeto cuando un juez al hacer
una determinación se expone a contradecir el derecho
afirmado en una decisión anterior.   Se tiene que
identificar cuál es el bien jurídico cuya protección o
concesión se solicita del juzgador.   Hay que considerar
no sólo la cosa sobre la cual se suscita la controversia,
sino también el planteamiento jurídico que se genera en
torno a ella.[28]

En cuanto al requisito de identidad de causas, según
interpretado por Manresa[29] "significa el fundamento

---

[26] Rodríguez Rodríguez v. Colberg Comas, 131 D.P.R. 212 (1992),
citando a Q.M. Scaevola, Código Civil, 2da ed., Madrid, Ed. Reus,
1958, T. 20, pág. 534.

[27] Lausell Marxuach v. Díaz de Yáñez, 103 D.P.R. 533 (1975).

[28] M. Serra Domínguez, Comentarios al Código Civil y Compilaciones
Forales, 2da ed., Ed. Edersa, 1991, T. XVI, Vol. 2, págs. 735-736.

[29] J.M. Manresa, Comentarios al Código Civil Español, 5ta ed. rev.,
Madrid, Ed. Reus, 1950, T. VIII, Vol. 2, págs. 237-242.

capital, el origen de las acciones o excepciones planteadas y resueltas, y no debe confundirse con los medios de prueba ni con los fundamentos legales de las pretensiones deducidas por las partes".[30] Por otro lado, Scaevola nos recuerda que la "causa" es el motivo que tuvo el demandante para pedir.[31] La identidad de causa existe cuando los hechos y los fundamentos de las peticiones son idénticos en lo que afecta a la cuestión planteada. A & P Gen. Contractors v. Asoc. Caná, *supra.* Al determinar si existe identidad de causas de acción debemos preguntarnos si ambas reclamaciones se basan en la misma transacción o núcleo de hechos.[32]

Finalmente, en cuanto a la identidad de las personas de los litigantes y la calidad en que lo fueron, el propio Art. 1204 del Código Civil, *supra,* dispone, en lo pertinente, que,

> Se entiende que hay identidad de personas siempre que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o estén unido a ellos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones entre los que tienen derecho a exigirlas u obligación de satisfacerlas.

Al considerar este tercer requisito, hemos señalado que los efectos de la cosa juzgada se extienden a quienes

---

[30] Véase, Rodríguez Rodríguez v. Colberg Comas, *supra.*

[31] Beníquez et al. v. Vargas et al., res. 4 de enero de 2012, 2012 T.S.P.R. 2, 184 D.P.R. ___ (2012), citando a Q.M. Scaevola, op. cit., pág. 535.

[32] Martínez Díaz v. E.L.A., 182 D.P.R. 580 (2011). Véase además, AVX Corp. v. Cabot Corp., 424 F. 3d 28 (1er Cir. 2005).

intervienen en el proceso, **a nombre y en interés propio.**[33]
En otras palabras, las personas jurídicas que son parte
en ambos procedimientos, cumplidos los requisitos de
identidad entre las causas y las cosas, serían las mismas
que resultarían directamente afectados por la excepción
de la cosa juzgada.[34]

De otra parte, el fraccionamiento de causa de acción
e impedimento colateral por sentencia son dos modalidades
de la doctrina de cosa juzgada. A continuación
analizamos cada una de las modalidades.

**1. Impedimento colateral por sentencia.**

Reiteradamente, hemos señalado que el impedimento
colateral por sentencia constituye una modalidad de cosa
juzgada.[35] Al igual que la doctrina de cosa juzgada, el
impedimento colateral tiene como propósito promover la
economía procesal y judicial, proteger a los litigantes
contra lo que representa defenderse o probar sus
reclamaciones en repetidas ocasiones tratándose de la
misma controversia, evitar litigios innecesarios y
decisiones inconsistentes.[36]

Ahora bien, el impedimento colateral se distingue de
la doctrina de cosa juzgada en que para su aplicación no

---

[33] Hernández Pérez v. Halvorsen, 176 D.P.R. 344 (2009) (Opinión Concurrente de la Juez Asociada señora Rodríguez Rodríguez).

[34] Serra Domínguez, op. cit., págs. 755-56.

[35] Beníquez et al. v. Vargas et al., supra; S.L.G. Szendrey-Ramos v. Consejo de Titulares, res. 29 de diciembre de 2011, 2011 T.S.P.R. 206, 184 D.P.R. ___ (2011); P.R. Wire Prod. v. C. Crespo & Assoc., 175 D.P.R. 139 (2008).

[36] Beníquez et al. v. Vargas et al., supra; Méndez v. Fundación, 165 D.P.R. 253 (2005).

es necesario que se dé el requisito de identidad de causas.[37] Esto significa que la razón de pedir que se presente en una demanda no tiene que ser la misma que se presentó en la demanda anterior.

En nuestra reciente decisión de Beníquez et al. v. Vargas et al., res. 4 de enero de 2012, 2012 T.S.P.R. 2, 184 D.P.R. ___ (2012), reiteramos nuevamente que la doctrina de impedimento colateral "surte efectos cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y se determina mediante sentencia válida y final [y] tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas". Sin embargo, no procede la interposición de la mencionada doctrina cuando la parte contra la cual se interpone no ha tenido la oportunidad de litigar previamente el asunto y no ha resultado ser la parte perdidosa en el litigio anterior.[38]

Por último, es menester señalar que la doctrina de impedimento colateral por sentencia no aplica a asuntos que pudieron ser litigados y determinados en el primer caso y no lo fueron. Su aplicación se limita a aquellas cuestiones que en efecto fueron litigadas y adjudicadas.[39]

---

[37] J. A. Echevarría Vargas, Procedimiento Civil Puertorriqueño, Colombia, Ed. Nomos, 2010, pág. 343. Véase, también, Beníquez et al. v. Vargas et al., supra; S.L.G. Szendrey-Ramos v. Consejo de Titulares, supra.

[38] Beníquez et al. v. Vargas et al., supra; P.R. Wire Prod. v. C. Crespo & Assoc., supra.

[39] United States v. International Bldg., 345 U.S. 502 (1953); Tartak v. Tribunal, 74 D.P.R. 862 (1953).

**2. Fraccionamiento de causa de acción.**

En cuanto a la modalidad de fraccionamiento de causa de acción, hemos expresado que aplica a toda reclamación posterior que se presente **entre las mismas partes y sobre el mismo asunto.**[40] Es por esto, que si un demandante tiene varias reclamaciones, que surgen de un mismo evento, **contra un mismo demandado** y presenta una de esas reclamaciones, se aplicará esta modalidad si luego de terminado dicho pleito decide presentar otro pleito contra el mismo demandado por las otras reclamaciones.[41] No procede extender esta doctrina a una parte que no fue incluida como demandada en el primer pleito.[42] Además, su aplicación se limitará a reclamaciones que son recobrables en la primera acción incoada.[43]

La modalidad de fraccionamiento de causa tiene como propósito promover la finalidad de las controversias judiciales y evitar las continuas molestias a una parte con la presentación sucesiva de varios pleitos relacionados con el mismo asunto.[44] Por lo tanto, esta modalidad procede cuando el demandante obtiene sentencia en un primer pleito, y luego radica una segunda acción

---

[40] S.L.G. Szendrey-Ramos v. Consejo de Titulares, *supra*; Abengoa S.A. v. American Intl. Ins. Co., 176 D.P.R. 512 (2009).

[41] Zambrana v. Tribunal Superior, 100 D.P.R. 179 (1971).

[42] Ramos González v. Félix Medina, 121 D.P.R. 312 (1988).

[43] Tesorero v. Tribunal de Contribuciones, 72 D.P.R. 617 (1951).

[44] S.L.G. Szendrey-Ramos v. Consejo de Titulares, *supra.*

contra la misma parte por otra porción de esa misma reclamación.[45]

## B. **Aplicación interjurisdiccional de la doctrina de cosa juzgada**

Cuando se presenta ante el Tribunal de Primera Instancia una sentencia federal final y firme y se levanta la defensa de cosa juzgada, hay que examinar el fundamento invocado en el foro federal que sustentó la jurisdicción federal. De esta forma podemos determinar si aplica la doctrina de cosa juzgada estatal o la doctrina de cosa juzgada federal.[46] Así, en aquellas circunstancias en las que el Tribunal Federal asumió jurisdicción al amparo de la doctrina de cuestión federal, se aplicará la norma federal de cosa juzgada para impedir que se litigue un caso nuevamente en el foro estatal. En cambio, en aquellas circunstancias en las que el foro federal asumió jurisdicción por diversidad de ciudadanía, se aplicará la norma estatal de cosa juzgada.[47] En el caso de <u>Díaz v. Navieras de P.R.,</u> 118 D.P.R. 297, 303 (1987), decidimos que:

> En situaciones como la de autos, en que una corte federal dicta sentencia luego de asumir jurisdicción por diversidad de ciudadanía, la jurisprudencia mayoritaria se inclina a reconocer que la doctrina estatal es la que gobierna. Esta postura se fundamenta en la premisa básica de que la doctrina de cosa juzgada es materia que pertenece al ámbito de

---

[45] <u>Avellanet v. Porto Rican Express Co.,</u> 64 D.P.R. 693 (1945).

[46] <u>Santiago, González v. Mun. de San Juan,</u> 177 D.P.R. 43 (2009).

[47] <u>Martínez Díaz v. E.L.A.</u>, 182 D.P.R. 580 (2011); <u>Santiago, González v. Mun. de San Juan,</u> *supra.*

> derecho sustantivo y, por ende, rige <u>Erie R.</u> <u>Co.</u>
> <u>v. Tompkins</u>, 304 U.S. 64 (1938).

La aplicación interjurisdiccional de la doctrina de cosa juzgada se estableció de esta manera para preservar la supremacía y finalidad de la decisión inicial basada en las leyes del foro que la dictó.[48]

De otra parte, se ha establecido que cuando el Tribunal Federal asume jurisdicción en un caso **bajo una causa de acción federal**, puede asumir jurisdicción suplementaria (accesoria) sobre una causa de acción estatal que de ordinario no tendría jurisdicción para adjudicarla.[49] Para que el foro federal pueda asumir jurisdicción suplementaria (accesoria) sobre una causa de acción estatal, es necesario que la reclamación federal sea lo suficientemente sustancial como para conferir al tribunal jurisdicción sobre la materia.[50] Si la reclamación federal es sustancial, el tribunal puede considerar todas las reclamaciones, estatales o federales, que surjan del mismo núcleo común de hechos, siempre que hubiera sido de esperarse que el demandante las litigara todas en un solo procedimiento judicial.[51] Si el demandante no solicita al foro federal que asuma jurisdicción suplementaria (accesoria) sobre la

---

[48] <u>Martínez Díaz v. E.L.A.</u>, *supra,* citando a <u>Santiago, González v. Mun. de San Juan</u>, *supra.*

[49] <u>Ramos González v. Félix Medina</u>, *supra.*

[50] <u>Ramos González v. Félix Medina</u>, *supra;* Véase además, 28 U.S.C.A. sec. 1367.

[51] <u>Díaz Maldonado v. Lacot</u>, 123 D.P.R. 261 (1989).

reclamación estatal, la sentencia que en su día emita el foro federal tendría el efecto de cosa juzgada por tratarse de un indebido fraccionamiento de causa, ya que pudiendo haberse hecho la solicitud no se hizo. Ramos González v. Félix Medina, 121 D.P.R. 312 (1988).

**C. Defensa afirmativa de cosa juzgada al amparo de la Regla 6.3 de Procedimiento Civil de 1979**[52]

Es importante señalar, que las reglas aplicables al caso de autos son las Reglas de Procedimiento Civil de 1979. En nuestro ordenamiento jurídico, la Regla 6.3 de Procedimiento Civil establece las distintas defensas que puede levantar un demandado en su alegación responsiva. Esta regla proviene de la Regla 8(c) de Procedimiento Civil Federal, Fed. R. Civ. P. 8(c).[53] Estas defensas comprenden materia de naturaleza sustantiva y/o materia constitutiva de excusa por la cual, la parte demandada no debe responder a las reclamaciones en su contra.[54] En el caso de Díaz Ayala v. E.L.A., 153 D.P.R. 675, 695 (2001), se aclaró que las defensas afirmativas "deben plantearse al responder la alegación precedente o se entienden **renunciadas;** deben ser **alegadas en forma clara, expresa y específica".** (Énfasis suplido.) Luego, esta expresión fue incorporada en las nuevas Reglas de Procedimiento

---

[52] 32 L.P.R.A. Ap. III, R. 6.3.

[53] J. A. Cuevas Segarra, Tratado de derecho procesal civil, 2da ed., T. II, San Juan, Publicaciones JTS, 2011, pág. 407.

[54] Díaz Ayala v. E.L.A., 153 D.P.R. 675 (2001); J.A. Cuevas Segarra, op. cit., pág. 408.

Civil de 2009[55] por el Comité Asesor Permanente de las Reglas de Procedimiento Civil.

El Prof. Rafael Hernández Colón, explica que las defensas afirmativas tienen que plantearse aseverando los hechos que las sustentan.[56] Quiere decir, que si meramente se alega la defensa afirmativa, la alegación es insuficiente y se entiende que se renunció.[57] Acorde con lo anterior, y en el contexto de la defensa de cosa juzgada y sus modalidades, en el caso de <u>Dávila v. Porto Rico Railway</u>, 44 D.P.R. 950, 959 (1933), expresamos que:

> La persona que aduzca la alegación de *res judicata* [cosa juzgada] debe establecerla mediante preponderancia de evidencia. Para probar la existencia y el contenido de una sentencia es necesario presentar, y ellos serían suficientes, los autos del pleito o copia auténtica, y estos hechos no pueden ser establecidos mediante prueba colateral o extrínseca. Además no basta presentar la sentencia solamente sino que ésta debe estar acompañada por el récord en su totalidad, cuando el mismo existe incluyendo el legajo de la sentencia, a menos que, según puede ocurrir con los decretos de equidad, la sentencia de la corte contenga una narración que demuestre plenamente no sólo el hecho de la sentencia sino el alcance y la extensión del impedimento (estoppel) por ella creado.

De otra parte, hemos advertido que los tribunales no pueden levantar *motu proprio* las defensas afirmativas que el demandado renunció, excepto por la defensa de falta de jurisdicción sobre la materia.[58]

---

[55] 32 L.P.R.A. Ap. V.

[56] R. Hernández Colón, <u>Derecho Procesal Civil</u>, 5ta ed., San Juan, Lexisnexis, 2010, pág. 251.

[57] R. Hernández Colón, <u>op. cit.</u>, pág. 251.

[58] Véase, nota al calce 10 en <u>Álamo v. Supermercado Grande, Inc.</u>, 158 D.P.R. 93 (2002).

La Regla 6.3 de Procedimiento Civil, dispone como defensa afirmativa la doctrina de cosa juzgada. Como defensa afirmativa debe ser invocada en la primera alegación responsiva o se entenderá renunciada. Olmeda Nazario v. Sueiro Jiménez, 123 D.P.R. 294 (1989). De igual forma, el impedimento colateral por sentencia y el fraccionamiento de causa de acción son modalidades distinguibles de la cosa juzgada, por lo que al igual que ésta última, constituyen defensas afirmativas independientes que deben plantearse cada una en forma clara, expresa y específica en la primera alegación responsiva. Como ya hemos discutido, en caso de que por no haber identidad de causa no pueda levantarse la defensa afirmativa de cosa juzgada, sí podría levantarse la modalidad de impedimento colateral.[59] Como señala el Tribunal del Quinto Circuito de Apelaciones Federal en el caso U.S. v. Shanbaum, 10 F. 3d 305 (5to Cir. 1994):

> Defenses of collateral estoppel and res judicata are not necessarily fungible concepts, and thus pleading one of these defenses does not necessarily signify that other has also been pleaded.

## III

En el caso de autos, el Tribunal de Apelaciones concluyó que el Tribunal de Primera Instancia incidió al no desestimar la causa de acción por la doctrina de cosa juzgada en su modalidad de fraccionamiento de causa. Tal determinación fue errada. Nos explicamos.

---

[59] Schneider v. Colegio de Abogados de P.R., 670 F. Supp. 1098 (1987).

A.

En primer lugar, la interpretación que el distinguido panel del Tribunal de Apelaciones hizo con relación a la aplicación interjurisdiccional de la doctrina de cosa juzgada es errónea. Como hemos señalado, cuando el foro federal asume jurisdicción por diversidad de ciudadanía, no se aplica la norma federal sino la estatal. La norma federal sólo se aplicará cuando el foro federal asuma jurisdicción por cuestión federal. Ahora bien, es importante aclarar que el Tribunal Federal podrá asumir jurisdicción suplementaria (accesoria) sobre reclamaciones estatales que surjan del mismo núcleo común de hechos, siempre que hubiera sido de esperarse que el demandante las litigara todas en un solo procedimiento judicial. Así las cosas, se necesita pedirle permiso al foro federal para que atienda esa causa de acción estatal.

En el caso ante nuestra consideración, el Tribunal Federal asumió jurisdicción por diversidad de ciudadanía contra International World por cobro de dinero. Además de esta causa de acción, Presidential tenía una causa de acción estatal contra Transcaribe por daños y perjuicios. Esta causa de acción estatal contra Transcaribe no surge por los mismos fundamentos que la reclamación contra International World. La reclamación contra International World surgió al ésta incumplir con su obligación de pagar el préstamo de capital de trabajo a Presidential. Por el contrario, la reclamación contra Transcaribe surgió por

ésta ocasionarle daños a Presidential por su actuación u omisión negligente. Por esta razón, Presidential no tenía que solicitarle al Tribunal Federal que asumiera jurisdicción suplementaria (accesoria) por la causa de acción contra Transcaribe. La doctrina de jurisdicción suplementaria (accesoria) no es vital, como indica el Tribunal de Apelaciones, para determinar si aplica la doctrina de cosa juzgada. Lo único que se tiene que examinar para determinar si procede la doctrina de cosa juzgada estatal o la doctrina de cosa juzgada federal es el fundamento invocado que sustentó la jurisdicción federal. Una vez se determina que la jurisdicción en el foro federal se basó en diversidad de ciudadanía, la doctrina de cosa juzgada que gobernará será la estatal.

Por lo tanto, erró el Tribunal de Apelaciones al aplicar la doctrina de jurisdicción suplementaria (accesoria) a los hechos del presente caso.

B

Atendemos entonces los errores planteados por la peticionaria, esto es, que el Tribunal de Apelaciones se equivocó al determinar que el Tribunal de Primera Instancia debió desestimar la causa de acción contra Transcaribe por constituir cosa juzgada en su modalidad de fraccionamiento de causa de acción.[60] Sobre dicho

---

[60] Aún cuando la peticionaria planteó dos errores distintos, el primero esbozando que erró el Tribunal de Apelaciones al determinar que existe cosa juzgada y el segundo esbozando que erró al determinar que existe fraccionamiento de causa de acción, realmente se trata de un sólo error y, por lo tanto, lo atenderemos como uno sólo.

asunto, la peticionaria plantea que Transcaribe renunció a la defensa afirmativa de cosa juzgada en su modalidad de fraccionamiento de causa por no levantarla en la contestación a la demanda. Además, en la alternativa, plantea que no ocurrió fraccionamiento de causa de acción porque no se cumplen los requisitos de dicha doctrina. Le asiste claramente la razón.

Como hemos señalado, los demandados tienen el deber de levantar todas las defensas afirmativas que entiendan pertinentes en su primera alegación responsiva. En el caso de Díaz Ayala v. E.L.A., 153 D.P.R. 675 (2001), expresamos que estas defensas tienen que plantearlas de manera clara, expresa y específica. También añadimos en ese caso, que las defensas afirmativas que no levante el demandado se entenderán renunciadas. Por la importancia de estas expresiones y para que no exista duda al momento de hacer la primera alegación responsiva, se añadieron estas expresiones a las nuevas Reglas de Procedimiento Civil de 2009.[61] Además, hemos expresado que los tribunales están impedidos de levantar las defensas afirmativas *motu proprio* cuando han sido renunciadas por las partes.

En el presente caso, Transcaribe no levantó la defensa de cosa juzgada en su modalidad de fraccionamiento de causa de acción. Sólo se limitó a levantar la modalidad de impedimento colateral por sentencia. Alega erróneamente, que al levantar la

---

[61] 32 L.P.R.A. Ap. V.

modalidad de impedimento colateral se debe entender que igualmente levantó la modalidad de fraccionamiento de causa, por ser ambas modalidades de cosa juzgada.

Como ya discutimos, a pesar de que el fraccionamiento de causa e impedimento colateral son modalidades de la doctrina de cosa juzgada, estas son defensas afirmativas distintas. Ambas modalidades tienen el mismo propósito, sin embargo, sus requisitos son distintos. La modalidad de fraccionamiento de causa de acción, aplica cuando un demandante tiene varias reclamaciones, que surgen de un mismo evento, contra un mismo demandado, pero presenta sólo una de esas reclamaciones y luego en un segundo pleito pretende presentar las otras reclamaciones. En otras palabras, aplica cuando en el segundo pleito se reclama lo que se pudo reclamar en el primer pleito, pero no se hizo. Por otro lado, la modalidad de impedimento colateral aplica a asuntos que ya fueron litigados y adjudicados y en el segundo pleito se trae ese mismo asunto, aunque sea bajo otra causa, contra el mismo demandado. En resumen, en la modalidad de fraccionamiento de causa no se ha litigado sobre el asunto aunque se pudo haber traído en el primer pleito, y en la modalidad de impedimento colateral ya se litigó sobre el asunto y se trae de nuevo en el segundo pleito.

En el caso de autos, Transcaribe levantó específica y únicamente la defensa de impedimento colateral. **No se puede entender que cuando un demandado levanta específica**

**y únicamente la modalidad de impedimento colateral, se asuma que levantó igualmente la modalidad de fraccionamiento de causa de acción.** Esto iría en contra de los principios y requisitos que hemos establecido para poder presentar con éxito una defensa afirmativa. Si Transcaribe deseaba levantar la defensa de fraccionamiento de causa de acción debió hacerlo de manera clara, expresa y específica en la contestación a la demanda. Es importante recalcar, que Transcaribe mencionó por primera vez, sin argumentar ni fundamentar, la defensa de fraccionamiento de causa en la moción de sentencia sumaria que presentó un año y cuatro meses después de su primera alegación responsiva. No es hasta la moción de reconsideración, luego de que el Tribunal de Primera Instancia dictara su sentencia, que Transcaribe mencionó y argumentó la defensa de fraccionamiento de causas de acción. No cabe duda, que Transcaribe renunció a la defensa de cosa juzgada en su modalidad de fraccionamiento de causa de acción.

Por lo tanto, el Tribunal de Apelaciones estaba impedido de resolver a favor de la doctrina de cosa juzgada en su modalidad de fraccionamiento de causa de acción, ya que el demandado había renunciado a esa defensa afirmativa al no levantarla en su primera alegación responsiva.

Ahora bien, aún si Transcaribe hubiese presentado a tiempo la defensa de cosa juzgada en su modalidad de fraccionamiento de causa de acción, dicha doctrina no

aplica, ya que no se configuran los requisitos de la misma. Veamos.

La defensa de fraccionamiento de causa de acción, como modalidad de la doctrina de cosa juzgada, requiere la más perfecta identidad entre las causas, las cosas, las partes y la calidad en que lo fueron. Para que exista identidad de partes es necesario que en el segundo pleito el demandante presente una reclamación contra el mismo demandado del primer pleito. No obstante, la doctrina de cosa juzgada establece excepciones en las que el demandado no tiene que ser la misma persona. Estas excepciones son: que el demandado sea causahabiente de los demandados del primer pleito, que estén unidos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones.

En el presente caso, Presidential demandó en el foro federal a International World y luego demandó en el foro estatal a Transcaribe. International World y Transcaribe evidentemente no son las mismas partes. Tampoco existen entre ellas alguna de las razones que constituyen excepciones al requisito de identidad de parte. Transcaribe no es ni causahabiente de International World ni tiene vínculos de solidaridad con esa empresa, como alega. Recordemos que la solidaridad en los contratos no se presume; existirá cuando la ley o el propio contrato indiquen que los deudores son solidariamente

responsables.[62]    En el presente caso, no se pactó que Transcaribe e International World fueran deudores solidarios a favor de Presidential y tampoco existe una ley que lo disponga.    International World le es responsable a Presidential por incumplimiento de contrato y cobro de dinero, mientras que Transcaribe le es responsable extracontractualmente por causarle daños y perjuicios.    Por lo tanto, erró el Tribunal de Apelaciones al entender que existe la más perfecta identidad de partes en ambos pleitos.

De otra parte, el Tribunal de Apelaciones entendió que existía identidad de causa, ya que en el foro estatal Presidential reclamó lo mismo que reclamó en el foro federal y por los mismos fundamentos.    El foro intermedio determinó que Presidential fraccionó la causa al no sustituir a una parte acumulada bajo nombre ficticio por Transcaribe.    Tampoco le asiste la razón.

Presidential demandó en el foro federal a International World por **cobro de dinero**, debido a que International World no pagó el préstamo concedido. Luego, en el foro estatal Presidential demandó a Transcaribe por **daños y perjuicios**, ya que su actuación negligente le causó daños.    Claramente, se trata de causas distintas.    El motivo que tuvo Presidential en cada reclamación es distinto.    En la primera reclamación, su motivo fue cobrar el dinero que International World le

---

[62] Art. 1090 Código Civil, 31 L.P.R.A. sec. 3101.

adeudaba. Por el contrario, el motivo que tuvo Presidential en la segunda reclamación fue que Transcaribe le indemnizara por los daños que le ocasionó su conducta culposa o negligente. El hecho de que Presidential conociera de la existencia de Transcaribe y no lo sustituyera por los nombres ficticios que incluyó en la demanda federal, no tiene efecto en la doctrina de fraccionamiento de causa de acción. Transcaribe no era una parte indispensable en el pleito de cobro de dinero contra International World y, por lo tanto, no tenía que ser incluido en la demanda ante el foro federal.

En vista de lo anterior, podemos concluir que tampoco le asiste la razón al foro intermedio sobre esta determinación. La reclamación posterior no fue **entre las mismas partes ni sobre el mismo asunto** como dispone la modalidad de fraccionamiento de causa de acción. Se trata de dos demandados independientes con causa de acciones distintas.

Por lo tanto, al no configurarse los requisitos de la doctrina de cosa juzgada, es forzoso concluir que no aplica la doctrina de cosa juzgada en su modalidad de fraccionamiento de causa de acción.

IV

Por las razones antes expresadas, se expide el auto de *certiorari,* se revoca la sentencia del Tribunal de Apelaciones, Región Judicial de Carolina, y se reinstala la sentencia dictada por el Tribunal de Primera Instancia.

Se dictará Sentencia de conformidad.


                              Erick V. Kolthoff Caraballo
                                   Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Presidential Financial
Corp. of Florida

   Peticionario

       v.                CC-2010-494    Certiorari

Transcaribe Freight Corp.

   Recurrido


SENTENCIA


San Juan, Puerto Rico, a 18 de julio de 2012.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la sentencia del Tribunal de Apelaciones, Región Judicial de Carolina, y se reinstala la sentencia dictada por el Tribunal de Primera Instancia.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton concurre y hace constar la siguiente expresión: "El Juez Presidente señor Hernández Denton concurre únicamente con las Partes II. A y II. C de la Opinión de este Tribunal por entender que el Tribunal de Apelaciones erró al aplicar la doctrina de cosa juzgada en su modalidad de fraccionamiento de causa. Transcaribe Freight Corp., renunció a esa defensa afirmativa al presentar solamente la defensa de impedimento colateral por sentencia y no especificar y fundamentar la de fraccionamiento de causa. Una vez resuelta esta controversia, no hubiésemos hecho los pronunciamientos expuestos en la Parte II. B ni en el resto de la Opinión que

no atienden ese asunto". La Juez Asociada señora Rodríguez Rodríguez, la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Rivera García concurren con el resultado sin opinión escrita.


                              Aida Ileana Oquendo Graulau
                              Secretaria del Tribunal Supremo